# IN THE COURT OF APPEALS OF IOWA

No. 16-0985
Filed June 21, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BOBBY RAY KLINGER SR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson,

Judge.


        Bobby Ray Klinger Sr. appeals from his conviction and sentence for

possession of a controlled substance, third or subsequent offense.  **AFFIRMED.**



        Colista K. Anglese of Hammer Law Firm, P.L.C., Dubuque, for appellant.

        Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant

Attorney General, for appellee.


        Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, Chief Judge.**

Bobby Ray Klinger Sr. appeals from his conviction and sentence for possession of a controlled substance, third or subsequent offense, a class "D" felony, in violation of Iowa Code section 124.401(5) (2015). Klinger asserts the trial court erred in denying his motion to suppress. Klinger also contends trial counsel rendered ineffective assistance. On our de novo review, we affirm the district court's denial of Klinger's motion to suppress. We also conclude the record is inadequate to address Klinger's ineffective-assistance-of-counsel claims, and we preserve such claims for possible postconviction-relief proceedings.

**I. Background Facts & Proceedings.**

On November 5, 2015, at approximately 9:30 p.m., Officer Brian Kelley initiated a traffic stop of Klinger's vehicle for failure to display headlamps, in violation of Iowa Code section 321.384. Officer Kelley testified the vehicle's parking lights were on, but Klinger had not turned on the headlights. The video from Officer Kelley's squad car dash camera affirmatively shows the headlights on Klinger's vehicle were not as bright as the vehicles traveling nearby and one of the headlights was not working.

Klinger pulled the vehicle to the side of the road, and Officer Kelley and Officer Andrew Becker approached the vehicle. Klinger was cooperative and provided the requested license and registration information. However, Officer Kelley discovered the license plate affixed to Klinger's vehicle belonged to a different vehicle owned by someone other than Klinger. Klinger explained the

improper registration was due to the fact he purchased the vehicle approximately one month prior.

Officer Kelley ordered Klinger to exit the vehicle, performed a pat-down of Klinger's person, and asked Klinger to sit on the curb near the rear of Klinger's vehicle. Officer Kelley returned to the squad car and also discovered Klinger was on active parole for manufacturing methamphetamine. The dash camera video then shows Officer Kelley walked back to Klinger and spoke with Klinger before performing a second, more thorough search of Klinger's person and a search of his vehicle.

Officer Kelley stated he had

seen it before where drug dealers, users, will exchange vehicles for narcotics, money, whatever. It was clear something was going on. And with that background, that is why I asked him if he had used any recently. And given the conditions of his parole, I was making sure he was in compliance.

Officer Kelley testified that during the conversation prior to the second search Klinger admitted to using methamphetamine that day and consented to the search of his vehicle. Klinger denied providing consent. Unfortunately, Officer Kelley's body microphone was muted at the time Klinger's consent to search the vehicle was discussed. The body microphone was initially working but was muted between the time Officer Kelley returned to the squad car after Klinger was asked to sit on the curb and when Officer Kelley again approached Klinger. Officer Kelley testified it was possible he bumped and accidentally muted the microphone when he bent over. Officer Becker was standing next to Klinger during the conversation in question but did not testify at the motion-to-suppress hearing.

While searching Klinger's vehicle, Officer Kelley discovered a substance later identified as methamphetamine and a number of syringes inside a backpack located in the front passenger compartment. Klinger was then arrested for possession of a controlled substance, third or subsequent offense. Klinger was also cited for failure to display headlamps.

On February 19, 2016, Klinger filed a motion to suppress the evidence discovered during Officer Kelley's search of his vehicle. Klinger asserted there was no probable cause for the traffic stop, the officers exceeded the scope of the traffic stop, and he did not consent to the search of his vehicle. The motion to suppress was denied.

Klinger stipulated to a trial on the minutes, which was held on June 2, 2016. The court found Klinger guilty of possession of a controlled substance, third or subsequent offense, and sentenced Klinger to a term of incarceration not to exceed five years, to run consecutively to his sentence for his parole revocation.

Klinger now appeals.

**II. Standard of Review.**

"We review the district court's denial of a motion to suppress on constitutional grounds de novo." *State v. Coleman*, 890 N.W.2d 284, 286 (Iowa 2017). We also review ineffective-assistance-of-counsel claims de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). "This review requires 'an independent evaluation of the totality of the circumstances as shown by the entire record.'" *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011) (citation omitted). "We give considerable deference to the trial court's findings regarding

the credibility of the witnesses, but are not bound by them." *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004).

**III. Analysis.**

On appeal, Klinger contends the court erred in denying his motion to suppress because the officers did not have probable cause to initiate the traffic stop and the warrantless search of Klinger's vehicle was carried out without probable cause or legal justification. Klinger also contends trial counsel rendered ineffective assistance.

**A. Motion to Suppress.**

Klinger maintains the officers' seizure of Klinger by initiating the traffic stop and search of his vehicle violated his right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution.

*1. Stop.* First, we consider Klinger's argument with respect to the traffic stop. "A traffic stop is permissible under our Iowa and Federal Constitutions when supported by probable cause or reasonable suspicion of a crime." *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015). "When a peace officer observes any type of traffic offense, the violation establishes both probable cause to stop the vehicle and reasonable suspicion to investigate." *Id.*

Klinger testified at the hearing on the motion to suppress, and maintains on appeal, his headlights were on at the time he was stopped. However, Officer Kelley testified he observed only Klinger's parking lights were on and his headlights were not illuminated. Officer Kelley stated upon approaching Klinger's vehicle he told Klinger his headlights were not on and instructed him to turn the

knob. Officer Kelley testified Klinger then turned the knob and the lights turned on. The dash camera video provides little help in ascertaining any increased illumination after Officer Kelley instructed Klinger to turn on the headlights.[1] But the dash camera video of Klinger's vehicle driving past the law enforcement vehicle shows Klinger only had one working headlight. Because the officers observed Klinger to be in violation of Iowa Code sections 321.384, .385, or .419, there was probable cause supporting the initiation of the traffic stop.

*2. Search.* Next, we consider whether Officer Kelley's search of Klinger's vehicle violated his constitutional rights. "Warrantless searches are per se unreasonable if they do not fall within one of the well-recognized exceptions to the warrant requirement." *State v. Lowe*, 812 N.W.2d 554, 568 (Iowa 2012) (citation omitted). "Consent searches are one of these exceptions." *Id.* "To be valid, consent must be voluntary." *Id.*

Officer Kelley testified, and the State maintains, Klinger consented to the search of his vehicle. Klinger denies that he provided consent. It is troubling that the body microphone was muted at the time Officer Kelley alleged Klinger provided consent, as is the State's failure to call Officer Becker to testify. Nonetheless, the district court found Officer Kelley's testimony more credible. Upon our examination of the transcript of testimony, we decline to diverge from the district court's credibility determination. *See State v. Lane*, 726 N.W.2d 371,

---

[1] In support of his assertion the headlights were on when he was stopped, Klinger relies on the testimony of a private investigator who examined Klinger's vehicle months after the incident. The private investigator noted the vehicle had an automatic headlights system but stated the automatic function can be turned on and off by simply turning a knob. The private investigator's testimony does not support any finding with respect to whether the headlights were or were not turned on at the time the officers initiated the traffic stop.

379 (Iowa 2007) ("The district court stated 'it carefully considered the conflicts in testimony' and found the 'officers to be more credible.' While we are not bound by these determinations, we give deference to the credibility determinations by the district court.").

The court also found Klinger's consent was given voluntarily. Factors to be considered in determining the validity of consent include: (1) "knowledge by the defendant of the right to refuse to consent," (2) "whether police asserted any claim of authority to search prior to obtaining consent," (3) "[t]he show of force or other types of coercive action" as well as "the use of deception by police," (4) "a threat by police to obtain a search warrant and forcibly execute it," and (5) "[t]he existence of illegal police action just prior to the time the consent is given." *State v. Reiner*, 628 N.W.2d 460, 465 (Iowa 2001). The district court held:

> [T]he court finds Defendant gave consent to search the vehicle. Here, Defendant was not detained at the time of the consent to search. He was seated on the curb without handcuffs near the rear of his car. Officer Kelley explained why he was conducting further investigation at the time he asked Defendant to exit his vehicle. Although Klinger was not advised of his right to leave or his right to voluntarily refuse consent, Klinger testified he studied to be a paralegal and was aware of his right to voluntarily refuse consent. Officer Kelley subjected Klinger to a pat-down before and after Officer Kelley asked him if he could search the vehicle. The stop was temporary, brief, and public; in all respects a typical traffic stop.

We add that in the dash camera video during the time Officer Kelley testified he sought consent, Klinger is observed affirmatively nodding, although we do not know if this was in response to the request to search. Moreover, Klinger remains calm even while Officer Kelley is searching the vehicle, but again, we do not know if Klinger was just being compliant or had consented to the search.

Upon our de novo review of the record, we adhere to the district court's credibility finding and conclude Klinger provided voluntary consent to the search of his vehicle. Therefore, the search did not violate Klinger's constitutional rights.

Because we find sufficient probable cause supported the traffic stop and Klinger consented to Officer Kelley's search of his vehicle, we affirm the district court's denial of Klinger's motion to suppress.

**B. Ineffective Assistance.**

Klinger also contends trial counsel was ineffective in failing to raise arguments regarding sentencing and failing to depose the State's witnesses. To prevail on an ineffective-assistance-of-counsel claim, Klinger "must show by a preponderance of the evidence that his trial counsel failed to perform an essential duty and prejudice resulted." *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006). However, "[o]nly in rare cases will the trial record alone be sufficient to resolve the claim on direct appeal." *Straw*, 709 N.W.2d at 133. "Because '[i]mprovident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel,' postconviction proceedings are often necessary to discern the difference between improvident trial strategy and ineffective assistance." *Ondayog*, 722 N.W.2d at 786 (citation omitted).

The record is insufficient to discern trial counsel's strategy with respect to the allegations of ineffective assistance as raised by Klinger. We therefore preserve Klinger's ineffective-assistance claims for possible postconviction-relief proceedings.

**IV. Conclusion.**

On our de novo review, we affirm the district court's denial of Klinger's motion to suppress. We also conclude the record is inadequate to address Klinger's ineffective-assistance-of-counsel claims, and we preserve such claims for possible postconviction-relief proceedings.

**AFFIRMED.**